## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEMLOCK CROSSING, LLC, and AMY )<br>HOLSINGER, on her behalf and on behalf )<br>of her minor child, and SHAWN )<br>PENNABAKER and CARLA )<br>PENNABAKER, on their behalf and on )<br>behalf of their minor children, )<br>Plaintiffs, )<br>v. )<br>)<br>LOGAN TOWNSHIP, a Pennsylvania )<br>Second Class Township, and FRANK J. )<br>MELOY, JAMES A. PATTERSON, and )<br>JERRY C. FULARE, in their capacity as )<br>Supervisors of Logan Township, )<br>Defendants. ) | CIVIL ACTION NO. 3:07-26<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION & ORDER

Now before the Court is Defendants' Motion to Dismiss pursuant to *Younger v. Harris*, 401 U.S.

37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) (Document No. 33), as well as Plaintiffs' opposition thereto

(Document No. 42), Defendants' Reply (Document No. 43), and Plaintiffs' Sur-reply (Document No.

51). Plaintiff Hemlock Crossing, LLC (hereinafter "Hemlock") filed its Complaint on February 5, 2007,

stating claims under the Fair Housing Act of 1968, as amended by the Fair Housing Amendments of

1988, 42 U.S.C § 3601 *et seq.* (hereinafter "FHA"), 42 U.S.C § 1983, and the Thirteenth and Fourteenth

Amendments to the United States Constitution. Document No. 1, ¶¶ 50-65. Hemlock sought injunctive

relief, as well as compensatory damages, exemplary damages, and costs and fees. *Id.* at ¶ 65. Hemlock

also moved for a preliminary injunction on February 16. Document No. 3. The Court ordered

expedited briefing and scheduled a hearing on that motion for April 2, 2007. Document No. 24. Citing

*Younger*, Defendants moved to dismiss the Complaint on March 9, 2007. Document No. 20. Hemlock

1

thereafter filed an Amended Complaint as of right, adding Plaintiffs Amy Holsinger, Carla Pennabaker, and Shawn Pennabaker, and withdrawing the Thirteenth Amendment claim. Document No. 32. Defendants, a Pennsylvania Second Class Township and its officials, then filed the motion *sub judice*, substantially reiterating their abstention arguments, on March 18, 2007. The Court again set an expedited briefing schedule and continued the April 2 hearing to April 12, 2007. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

According to the Amended Complaint, Hemlock, an Ohio corporation, purchased in December 2006 a series of undeveloped parcels (hereinafter "the Property") located in Logan Township (hereinafter "the Township"), Blair County, Pennsylvania. Document No. 32, ¶ 15. Its intent was to build a residential development composed of homes for single families earning half the median income. Citing recent census data, Plaintiffs allege that the Township is characterized by a considerable racial imbalance and a need for low-income housing. Both the Pennabaker and Holsinger families (hereinafter "the individual Plaintiffs") qualify for the proposed low-income housing. *Id.* at ¶¶ 16-18.

Hemlock received tax credits from the Pennsylvania Housing Finance Agency (hereinafter "PHFA"), a state agency that offers tax incentives to help developers finance affordable rental housing. Hemlock has expended a significant amount of money, resources and effort in developing the Property, but alleges that area residents have successfully "pressured Defendants to frustrate and eventually deny Hemlock's application to develop the property." Township residents apparently expressed at public meetings a fear that the development would introduce drugs and crime to the area. Hemlock also claims that Defendants communicated to potential investors their opposition to the project and manufactured false reasons to deny Hemlock's various land use applications. Plaintiffs believe that Hemlock has met

2

all the requirements and is entitled to all necessary land use approvals. *Id.* at ¶¶ 26-33.

According to Plaintiffs, Defendants knew that on January 30, 2007, Hemlock would submit for approval its subdivision plan, which responded to comments previously made by Logan officials. However, at a public meeting held on January 25, the Township passed a resolution authorizing the condemnation of a substantial portion of the Property pursuant to Pennsylvania's Eminent Domain Code. This action was taken without notice to Hemlock, who submitted its revised plan on January 30. On the morning of January 31, Hemlock was informed that the Township would reject the plan for unspecified deficiencies. *Id.* at ¶¶ 35- 48. Plaintiffs now allege that "the condemnation was for the purpose of developing a new municipal complex. . . . [and] [b]y authorizing the taking . . . Defendants are clearly intending to prevent low-income families and minorities from having affordable housing. . . ." *Id.* at ¶¶ 49, 53. In addition to economic damages, the requested relief includes:

> a preliminary and permanent injunction: ordering Defendants to immediately relinquish the condemned property. . . [and] enjoining Defendants from improperly and unlawfully interfering with the development of this property, including enjoining Defendants . . . from discriminating because of race, color and/or national origin of any person in any aspect of the use or enjoyment or development of the Property.

*Id.* at 74.

Defendants report that the Township filed its eminent domain action in the Court of Common Pleas of Blair County, Pennsylvania, on February 1, 2007, four days before Hemlock filed the Complaint. Document No. 34, p. 2. Defendants argue that were this Court to grant the injunctive relief, it would necessarily undercut that proceeding, which is judicial in nature and which addresses a fundamental prerogative of the state. *Id.* at 3. Because the Pennsylvania Supreme Court has expressly provided landowners the opportunity to state federal claims through objections to a taking action, Defendants believe that this Court lacks jurisdiction under *Younger*'s theory of abstention. *Id.* at 4-5.

3

## II. ANALYSIS

### A. Applicable Standard

Because it represents an abdication of the Congressionally-conferred duty to adjudicate cases otherwise within the Court's jurisdiction, abstention in general "is an extraordinary and narrow" doctrine justly employed only in "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). *See also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989). Nonetheless, in a series of cases beginning with *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), the Supreme Court has held that federal courts should not interfere with state judicial proceedings unless a particular type of harm is imminent. *Younger* abstention, however, "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003).

In the Third Circuit, *Younger* abstention is appropriate if three requirements are met: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1200 (3d Cir. 1992) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)). "Even if this test is met, however, abstention is not appropriate if the plaintiff establishes that 'extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.'" *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (quoting *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

4

### B. The *Middlesex* Factors

Plaintiffs concede that the eminent domain action in Blair County constitutes an ongoing judicial proceeding, though they note that only Hemlock Crossing is involved therein, and that the individual Plaintiffs in this action are not parties to the state proceeding. Accordingly, the Court's analysis will focus on the prongs of the test that Plaintiffs dispute. Because the Amended Complaint seeks monetary judgment and injunctive relief, the analysis will also examine separately the issues surrounding the different remedies

### 1. The Damages Claims

Defendants argue that "eminent domain judicial procedures are an important state interest" and that an injunction "designed to prevent the Blair County Court of Common Pleas from proceeding in the pending eminent domain case would certainly strike at the heart of Pennsylvania's eminent domain code and judicial system." Document No. 34, pp. 3-4 (citing *La. Power & Light Co. v. Thibodaux*, 360 U.S. 25, 79 S. Ct. 1070, 3 L. Ed. 2d 1058 (1959)). *Thibodaux*, of course, represents a distinct doctrine of abstention that is immaterial for our purposes. *Chiropractic Am. v. LaVecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (surveying the varieties of abstention); *Grode v. Mut. Fire, Marine, & Inland Ins. Co.*, 8 F.3d 953, 957 (1993) ("*Thibodaux* is really a variant of the *Burford* abstention."). But while the Supreme Court has disabused any suggestion that eminent domain proceedings are so unique as to always warrant federal abstention, *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959), *Thibodaux*'s reference to eminent domain as "'a prerogative of the State, which on the one hand may be exercised in any way that the State thinks fit, and on the other may not be exercised except by an authority which the State confers'" is not irrelevant here. *Thibodaux*, 360 U.S. at 26, 79 S. Ct. at 1072, 3 L. Ed. 2d at 1061 (quoting *Madisonville Traction Co. v. St. Bernard Mining Co.*, 196

5

U.S. 239, 257, 25 S. Ct. 251, 49 L. Ed. 462 (1905) (Holmes, J., dissenting)). The importance of a state's interests in its own eminent domain proceeding is practically self-evident and generally uncontroversial. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1202 (3d Cir. 1992) (referring to the important state interest of land use policy).

Plaintiffs in this case, however, have not attacked the constitutionality of Pennsylvania's eminent domain law or the validity of the procedures that Logan Township followed in this case. Their claims, based on federal antidiscrimination laws and constitutional rights, instead only attack the motivation behind Defendants' use of those laws. Document No. 32, ¶¶ 54-74. The claims for damages thus neither present a land use case nor implicate state policies; they are instead federal claims being aired in federal court. The Third Circuit has indicated that abstention is not necessary where the federal claims "demonstrate no disrespect for the state's jurisdiction to adjudicate any of the claims pending" in the state proceeding. *Gwynedd Props.*, 970 F.2d at 1201. In addressing a similar case centering on local zoning and land use policies, that court found *Younger* abstention inappropriate because in deciding "whether the Township has engaged in willful and malicious application of the state and local land use policies, the District Court need not touch on the zoning policies themselves." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 410-11 (3d Cir. 2005).

In the case *sub judice*, deciding whether Defendants violated the FHA or Plaintiffs' civil rights does not require review of state law or policy, and there is no important state interest that counsels for abstention. Count I of the Amended Complaint alleges two types of FHA claims, intentional discrimination and disparate impact. Document No. 32, ¶¶ 60-65. Such claims require evidence that impermissible motivations influenced the condemnation or that Defendants' "action had a greater adverse impact on the protected group than on others." *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284

6

F.3d 442, 466-67 (3d Cir. 2002). The elements of a *prima facie* disparate impact case are: "'(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" *Id.* at 467 (quoting *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997)). Plaintiffs could prevail on Count II of the Amended Complaint, alleging a violation of 42 U.S.C. § 1983 based on Fourteenth Amendment rights, if they established the deprivation of a federally-secured right made under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). None of these claims require review of state or local eminent domain policies. There is no plausible argument of an exclusive state interest in preventing and redressing discrimination, and this Court cannot forego the jurisdictional mandate Congress has bestowed on it. *Gwynedd Props.*, 970 F.2d at 1202-03.

Moreover, the inadequacy of the state forum also counsels against abstention. According to Defendants Pennsylvania's eminent domain procedures explicitly provide that condemnees may state federal constitutional objections to a taking. Document No. 34, p. 4 (citing 26 PA. C.S. § 306(a)(3)(i); *In re Condemnation By Urban Redevelopment Auth. of Pittsburgh*, 913 A.2d 178 (Pa. 2006) (resolving federal free-speech objections)). Plaintiffs correctly point out, however, that ability and adequacy are distinct concepts. Document No. 42, p. 16. Though state courts may have the jurisdiction to decide federal claims, their inability to award certain kinds of relief may make them inadequate fora for abstention purposes. *Addiction Specialists*, 411 F.3d at 414-15; *Bonsall Village, Inc. v. Patterson*, No. 90-0457, 1990 U.S. Dist. LEXIS 12530, at ** 12-13 (E.D. Pa. Sept. 19, 1990) (finding abstention inappropriate where the damages available in the state proceeding were considerably more limited than those allowed by federal law).

7

The FHA permits the recovery of all relief that "the court deems appropriate," including actual and punitive damages, restraining orders, injunctions, costs, and attorney's fees. 42 U.S.C. § 3613(c). Similarly, the Court can award § 1983 claimants punitive as well as economic damages. *Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2006) (citing *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).[1] Pennsylvania's eminent domain law, however, describes a narrower universe of damages, generally limited to actual costs and expenses and occasionally permitting the recovery of attorney's fees. *See e.g.*, 26 PA. C.S. §§ 306(g)(1), 307(a)(1)(i), 308(d). Thus, if Plaintiffs' preliminary objections to the condemnation are sustained out of respect for their federal constitutional and statutory rights, their only recovery could be title and costs. On the other hand, if this Court finds that those same rights have been violated, it may impose on Defendants more significant sanctions. The Court is therefore unable to consider the state condemnation proceeding to be an adequate forum for the damages claims presented in the Amended Complaint.

Because Plaintiffs' claims for economic damages neither require that this Court review the validity of state or local laws and policies, nor are capable of full review in the state condemnation proceeding, they do not implicate the comity concerns that animate abstention doctrine. Accordingly, this Court is bound to hear them.

### 2. Hemlock's Request for Injunctive Relief

There is a significant difference between economic and equitable damages, however, because the latter could "result in a *de facto* review of the [Defendants'] decisions currently under review in the state courts," *Gwynedd*, 970 F.2d at 1204. In contrast to economic damages, injunctive relief poses

---

[1] While Defendants point out that punitive damages against state officials are often unavailable in § 1983 cases, Document No.43, pp. 7-8, the Court need not at this time make any ruling on possible theories of recovery. It suffices for immediate purposes that punitive damages are possible in § 1983 and FHA actions.

8

some threat to Pennsylvania's "interest in protecting the authority of [its] judicial system, so that its orders and judgments are not rendered nugatory." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 n.12, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987). Thus, "abstention may . . . be appropriate if a federal injunction preventing the Township from acting in a discriminatory manner would have the effect of enjoining state proceedings that do involve important state interests." *Addiction Specialists*, 411 F.3d at 410. There is thus an important state interest at stake to the extent that Hemlock's Motion for a Preliminary Injunction (Document No. 3) could, if granted, interfere with the state condemnation proceeding.

Pennsylvania's eminent domain code stipulates that title to condemned property transfers to the condemnor immediately upon the filing of a declaration of taking along with the proper security. 26 PA. C.S. § 302(a). That is precisely what occurred in this case. Notice of Condemnation, Document No. 3-2. The only method for challenging a condemnation is set forth in 26 PA. C.S. § 306(a): "Filing and Exclusive Method of Challenging Certain Matters—(1) Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking." However, even if the objections are overruled, title may still return to the condemnee if the condemnor, prior to paying just compensation, decides at its own discretion to "relinquish all or any part of the property condemned that it has not taken actual possession of for use in the improvement." 26 PA. C.S. § 308(a)(1).

Plaintiffs do not explicitly request a stay of the state condemnation proceeding; they emphatically assert that they "are ***not*** asking this court to decide the factual question of whether the condemnation is lawful." Document No. 51, p. 5. Instead, Plaintiffs ask the Court "to order the Defendants to relinquish title, an act which Defendants are permitted to do under Section 308 of the Eminent Domain Code, in order to avoid a violation of law." *Id.* at 3. More specifically, Plaintiffs'

9

Motion for Preliminary Injunction requests an injunction:

> (i) ordering Defendants to immediately relinquish the condemned property . . .
> pursuant to the Pennsylvania Eminent Domain Code and returning the parties to the
> status quo prior to the approval of [the January 25, 2007,  resolution]; and (ii)
> enjoining Defendants from improperly and unlawfully interfering with the
> development of this property, including enjoining Defendants, their agents,
> employees, and successors, and all persons in active concert or participation with
> them from discrimination because of race, color, and/or national origin of any person
> in any aspect of the use or enjoyment or development of the property.

Document No. 3, pp. 1-2. Plaintiffs allege that the sensitive timing of their case warrants a return to

the *status quo* as it existed prior to the filing of Defendants' declaration of taking. As set forth in the

Motion for Preliminary Hearing, a condition of the tax credits and state-sponsored loans that Hemlock

has received is that the development must be completed by December 31, 2008. Affidavit of David

Cooper, Jr., Document No. 3-3, ¶¶ 23, 26. Hemlock claims that construction must begin by Fall 2007

if this deadline is to be met and revocation of the tax credits and loans avoided. *Id.* at ¶¶ 79-80.

According to Plaintiffs, there thus exists a danger that the motivations behind the condemnation—which

Plaintiffs allege were discriminatory—will be ratified not by judicial review but through the mere

operation of time. Document No. 51, p. 2. "[F]ailure to return the parties to their status prior to the

condemnation . . . by the end of April will effectively eliminate the . . . financing and [tax] credits for

the Property and end the proposed development all together [sic]." *Id.* at 2 n.1.

Though still in the form of a federal claim, the Motion for Preliminary Injunction clearly

petitions for some sanctuary—even if temporary—from the condemnation. While the equitable relief

Plaintiffs seek neither contests Defendants' taking power nor directly impedes the ongoing

condemnation proceeding, the restoration of title and an injunction against future discrimination would

circumvent Pennsylvania's law of eminent domain and require some review of Defendants' actions.

In reversing the operation of § 302 or enjoining any interference with Hemlock's development, this Court would be deciding Defendants' ownership rights in the Property, thereby implicating the power of eminent domain that Pennsylvania has conferred on the Township. Similarly, enjoining future discrimination would indicate suspicion that invalidity infuses a condemnation already being reviewed by a state court according to legislatively-determined procedures. *Cf. Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002) (ordering a preliminary injunction where plaintiffs had demonstrated a reasonable probability that the defendants had practiced impermissible discrimination); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995) (reversing a district court's refusal to issue equitable relief where a jury had found prior violations of the FHA). This preemption of the statutory design is just as much an interference with the state proceeding as an injunction staying the condemnation itself. The claim for equitable relief thus satisfies the second *Middlesex* prong. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1203 (3d Cir. 1992) (calling important "a state's interest in its judicial system [and] its interest in land use policy").

At the third *Middlesex* prong, the burden is on Plaintiffs to show that the relief they seek from this Court is not available in the state proceeding. *Pennzoil Co.*, 481 U.S. at 14-15. Moreover, the Supreme Court counsels that litigants should at least test state procedures before alleging their inadequacy to a federal court. *Id.* Plaintiffs have made no showing that Pennsylvania courts are incapable of granting injunctive relief that reverses the automatic title transfer in § 302. The Court can find no authority for such a proposition and therefore will not conclude that the Court of Common Pleas of Blair County is an inadequate forum for adjudicating the title relinquishment Plaintiffs seek in this Court. Nor have Plaintiffs addressed how the urgency of their case requires federal intervention. *Id.* The Court must therefore abstain from ordering the equitable relief that Plaintiffs seek in this case.

11

*Acierno v. New Castle County*, 40 F.3d 645, 655 n.13 (3d Cir. 1994) (suggesting that on remand the lower court should consider whether to abstain from issuing injunctive relief against a county that was litigating the same issue in a state proceeding); *Gwynedd Props.*, 970 F.2d at 1204 (finding *Younger* abstention appropriate where the developer sought to enjoin a municipality "from interfering with plaintiff's lawful use of its property").

While the motion for an injunction meets each of the three *Middlesex* prongs, the Court notes abstaining from this claim also comports with the animating principles behind *Pennzoil*. Though the dearth of judicial discretion in a statute that mandates automatic title transfer may suggest little concern for disrupting the manner by which Pennsylvania enforces its judgments and orders of court, this Court would be inappropriately inserting itself in the condemnation proceeding by countermanding Pennsylvania's law of eminent domain. Pennsylvania has set out the means by which designated authorities can exercise the power of eminent domain; it has also provided the means by which such exercises can be challenged. For a federal court to intrude on that process in the manner Plaintiffs request would "amount to disregard of the comity that we owe Pennsylvania." *Schall v. Joyce*, 885 F.2d 101, 107 (3d Cir. 1989).

Given that the Court only abstains from providing a particular form of relief, it sees less need to explore any exceptions to *Younger* abstention. Those exceptions help amplify the incongruity of deferring to a state proceeding that either has no legitimate purpose and is meant only to harass, *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002); is adjudicating interests distinct from those that the federal litigants advance, *Sullivan v. Pittsburgh*, 811 F.2d 171, 177-78 (3d Cir. 1987); or is somehow unable to address a threat of immediate harm, *Sullivan*, 811 F.2d at 179-80. Little incongruity is present, however, where the federal claims will receive full ventilation in a federal

court and comity interests counsel only against a particular form of equitable relief. Nonetheless, the Court notes that the alleged public purpose behind Defendants' condemnation dispels any notion of bad faith. *See Diamond "D" Constr.*, 282 F.3d at 199 ("For a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome."). Nor is there any suggestion that Pennsylvania's eminent domain code is flagrantly unconstitutional. *Gwynedd Props.*, 970 F.2d at 1200. Finally, the Court cannot conclude that Plaintiffs will be irreparably harmed without immediate federal injunctive relief, *Pennzoil*, 481 U.S. at 14-15 (indicating that the mere need for exigency does not constitute an exception to *Younger*), or that it must insert itself into the condemnation proceeding on behalf of the individual Plaintiffs.

### C. Whether to Stay the Federal Case

Having decided that it should abstain from issuing any equitable relief but adjudicate Plaintiffs' claims for damages, the Court must now determine what procedural posture to assume going forward. It is within the discretion of this Court to stay the federal lawsuit pending the outcome of the state condemnation proceeding. *Addiction Specialists*, 411 F.3d at 415. Because the amount of damages that this Court might award could depend on the just compensation ordered by the state court if the condemnation is upheld, the Court finds it advisable at this time to issue a stay in this case. *Gwynedd Props.*, 970 F.2d at 1205 (commenting that a litigant "should not be permitted to recover damages in its federal action which potentially may be compensable in the condemnation proceedings").

### III. CONCLUSION

Because the injunctions that Plaintiffs request would necessarily interfere with Pennsylvania's interests in the integrity of its judiciary and the selective exercise of its eminent domain powers, the Court must abstain from issuing any equitable relief. However, the remaining damages claims implicate

13

no important state interests and fall within the Congressionally mandated jurisdiction of this Court. While Plaintiffs therefore remain free to pursue those FHA and § 1983 actions set forth in their Amended Complaint, a stay in this lawsuit pending resolution of the state condemnation proceeding best reflects the Court's interest in judicial efficiency and the Parties' interests in a fair and effective resolution of the claims.

An appropriate Order follows.

14

**AND NOW**, this 9th day of April, 2007, upon consideration of Defendants' Motion to Dismiss (Document No. 33), **IT IS HEREBY ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. Specifically, the Court finds that it must abstain from issuing any injunctive relief. Plaintiffs remain free, however, to pursue all other form of relief appropriate under the claims set forth in the Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Document No. 3) and Plaintiffs' Motion for Preservation of Computer Data, Documents and Things (Document No. 7) are both **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for Lack of Jurisdiction (Document No. 20), is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that this action is stayed pending the resolution of the state condemnation proceeding regarding the disputed property.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**

15